1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    ANTHONY ALONZO,

10              Plaintiff,                    No. CIV S 04-1622 GEB CMK

11         vs.

12   ANTHONY PRINCIPI, Secretary
     of Department of Veteran's Affairs,

13

14              Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff, who is proceeding pro se and in forma pauperis, brings this action

17   seeking review of the Equal Employment Opportunity Commission's (EEOC) decision granting

18   summary judgment on plaintiff's allegations of discrimination and retaliation against the

19   Department of Veteran's Affairs (VA).  This matter was referred to the undersigned pursuant to

20   28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302(b)(21).

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

1    Currently before the court is defendant's motion for summary judgment. (Doc. 21.)

2  Plaintiff has filed no reply or opposition to defendant's motion.  This matter came on for hearing

3  before the undersigned on December 13, 2005.  Joseph E. Maloney, Assistant United States

4  Attorney, appeared telephonically for defendant.  Plaintiff, Anthony Alonzo failed to appear.[1]  For

5  the reasons set forth below, the undersigned recommended granting defendant's motion for

6  summary judgment at the December 13, 2005 hearing.

7  **I.    Background**

8    Plaintiff is a Hispanic male who was employed within the VA's Northern

9  California Health Care System (NCHCS) as a social worker.  Plaintiff filed four complaints of

10  discrimination with the EEOC, which allege retaliation and employment discrimination.  Plaintiff

11  bases his complaints on dissatisfaction with his co-workers, supervisors and working conditions

12  at the Sacramento Mental Health Clinic, the David Grant Medical Center and CREC.[2]  Plaintiff

13  elected to have his claims heard before an administrative law judge (ALJ) of the EEOC.  The VA

14  filed a Motion for Decision without a Hearing pursuant to 29 C.F.R. 1614.109(g).  Plaintiff filed a

15  response , and the ALJ granted the VA's motion.  The Office of Employment Discrimination at

16  the VA accepted the ALJ's findings and issued the VA's final order.  Plaintiff appealed to the

17  EEOC, which affirmed the VA's final order.  The EEOC denied plaintiff's motion for

18  reconsideration, and plaintiff filed the instant action.

19  _____

20    [1]On December 12, 2005 at approximately 3:30 p.m, the day before the hearing on the motion for summary judgment, plaintiff contacted the United States District Court in Redding to state the he could not make it to the hearing and that he would be filing a motion for a

21  continuance by faxing it to the United States District Court in Redding.  Plaintiff also filed the motion in Sacramento on December 12, 2005.  Plaintiff, however, did not properly serve his

22  motion to continue on opposing counsel.  Plaintiff must include with every document filed in this action a certificate stating the date an accurate copy of the document was mailed to defendant's

23  attorney and the address to which it was mailed.  See Local Rule 5-135(b) and (c).  In a separate order, the court has stricken plaintiff's motion from the record for failure to serve the opposing

24  party.

25    [2]It is not clear from the filings for what CREC is an acronym.  All filings and exhibits simply refer to CREC, which is a facility within the VA's Northern California Health Care

26  System.

1    Plaintiff's four complaints contain individual claims.  Each claim is based on a

2  different set of material facts.  For the sake of clarity, the undersigned discusses each claim with a

3  particularized set of undisputed facts relevant to that claim instead of setting forth a separate list

4  of undisputed facts.

5  **II.    Discussion**

6    A.    Summary Judgment Standard

7    Summary judgment is appropriate when it is demonstrated that there exists "no

8  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9  matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

10    . . . always bears the initial responsibility of informing the district court of
   the basis for its motion, and identifying those portions of "the pleadings,
11    depositions, answers to interrogatories, and admissions on file, together
   with the affidavits, if any," which it believes demonstrate the absence of a
12    genuine issue of material fact.

13  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

14  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment

15  motion may properly be made in reliance solely on the 'pleadings, depositions, answers to

16  interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after

17  adequate time for discovery and upon motion, against a party who fails to make a showing

18  sufficient to establish the existence of an element essential to that party's case, and on which that

19  party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning

20  an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

21  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before

22  the district court demonstrates that the standard for entry of summary judgment, as set forth in

23  Rule 56(c), is satisfied."  Id. at 323.

24    If the moving party meets its initial responsibility, the burden then shifts to the

25  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

26  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

1  establish the existence of this factual dispute, the opposing party may not rely upon the

2  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

3  form of affidavits, and/or admissible discovery material, in support of its contention that the

4  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

5  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

6  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

7  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

8  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

9  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

10      In the endeavor to establish the existence of a factual dispute, the opposing party

11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

16  committee's note on 1963 amendments).

17      In resolving the summary judgment motion, the court examines the pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

19  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

22  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

23  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

24  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

25  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4

1  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

3      B.    Plaintiff's Complaint

4          Plaintiff seeks administrative review of an ALJ's decision grant of summary

5  judgment in favor of the VA on plaintiff's four complaints of employment discrimination and

6  retaliation.  Defendant moves for summary judgment of plaintiff's complaint on the grounds that

7  plaintiff cannot establish a prima facie case for any of his discrimination or retaliation claims.

8      1.    Complaint 96-2097

9          In his first EEOC complaint, plaintiff raised one claim–that he was discriminated

10  against when he was not hired for the collateral duty position of clinic manager at the VA's

11  Sacramento Mental Health Clinic.  The undisputed facts reveal that plaintiff was employed by the

12  VA as a social worker and assigned split duty stations at the David Grant Medical Center at

13  Travis Airforce Base and the Sacramento Mental Health Clinic.  (Def.'s Mot. Summ. J., Ex. B.)

14  Around January 1996, the NCHCS decided that each clinic should have a clinic manager.  (See

15  id.)  The NCHCS drafted a set of criteria for the clinic manager position.  (See id.)  The criteria

16  included, among other things, that the manager "should be a full time employee at one of the

17  facilities at which he or she was applying for," and that "the manager must be a professional

18  provider in nursing or social work, psychology or psychiatry".  (See id. at 2097-5.)  Plaintiff was

19  not a full-time employee at the Sacramento Mental Health Clinic, as required by the selection

20  criteria.  (See id. at 2097-98.)  Additionally, plaintiff was not certified by the State of California

21  as a Clinical Social Worker, which was also part of the selection criteria.  (See id. at 2097-

22  100:16.)

23          Between January and June of 1996, several e-mails were sent by a supervisor

24  concerning the manager position.  (See id. 2097-5.)  Plaintiff received the e-mail, and responded

25  to the e-mail, stating his interest in the position.  (See id.)  In late March or early April, a draft

26  announcement was sent to all employees listed on a distribution list.  (See id. at 2097-0128.)  (See

5

1   id. at 2097-0023.)  Plaintiff was not on the distribution list.  (See id.)  Plaintiff was on sick leave

2   from April 17, 1996, to May 7, 1996, for knee surgery.  (See id. at 2097-0001.)  After April 25,

3   1996, the applicants were reviewed and a selection was made.  (See id. at 2097-0115.)  Plaintiff

4   did not apply for the clinic manager position.  (See id.)

5             Between May 10, 1996, and May 17, 1996, plaintiff returned from sick leave and

6   contacted his supervisor to inquire why he had not been sent the draft announcement of the

7   manager position.  (See id. at 2097-0003.)  The supervisor was unaware that plaintiff had not

8   been notified.  (Def's Mot. Summ. J., Ex. B., Ernstrom Affidavit at 2097-0102.)  The supervisor

9   explained to plaintiff that he probably had not been notified because he was not a full time

10   employee at the Sacramento Clinic, which the selection criteria required, and had therefore been

11   overlooked.  (See id.)  On June 7, 1996, it was announced that Douglas Wood, Phd, who is not

12   hispanic, had been selected as the mental health clinic manager for the Sacramento Mental Health

13   Clinic.  (Def's Mot. Summ. J., Ex. B, Counselor's Report at 2097-0021.)  On August 13, 1996,

14   plaintiff filed a complaint of discrimination.  (Def's Mot. Summ. J., Ex. B. VA complaint at 2097-

15   0035.)  After conducting several interviews, the EEO investigator concluded, in his investigative

16   summary and analysis, that plaintiff's allegations were unsupported by the evidence.  (Def's Mot.

17   Summ. J., Ex. B at 2097-0008.)

18             To establish a prima facie complaint in a case of non-selection for a position, a

19   plaintiff must either introduce direct evidence that an employer expressly discriminated against a

20   job applicant or present indirect evidence of discrimination.  See Mondero v. Salt River Project,

21   400 F.3d 1207, 1211 (9th Cir. 2005.)  To establish a case based on indirect evidence, a plaintiff

22   must show that (1) he was a member of a protected class; (2) he applied and was qualified for a

23   position which he sought; (3) despite being qualified for the position, he was rejected, and; (4)

24   after he was rejected, the employee continued to seek applications from people with comparable

25   qualifications.  See id.

26             Plaintiff presents no evidence of direct discrimination.  He cannot establish a case

1   based on indirect evidence as plaintiff cannot show that he was qualified for the collateral duty

2   position—plaintiff was neither a full time employee of the clinic, nor was he a licensed social

3   worker.  See id.  Accordingly, the undersigned finds that plaintiff has failed to present a prima

4   facie case of discrimination and recommends that defendant's motion for summary judgment be

5   granted.

6         2.    Complaint 97-0231

7         In his second EEOC complaint, plaintiff raises eight claims: change of

8   performance rating, inquiries involving his duty hours, that he was discouraged from pursuing

9   claims, tardiness, a negative interoffice memorandum, position reassignment, physical office

10  space reassignment and emotional distress.

11        *Change of Performance Rating*

12        Plaintiff alleges that he was discriminated against when his performance rating

13  was changed from the proposed rating of "outstanding" to "highly successful". (Def's Mot.

14  Summ. J., Ex. C. at 0231-0003.)  The undisputed facts reveal that plaintiff received his

15  performance appraisal for the period of April 1, 1995, to March 31, 1996, on May 22, 1996.  (See

16  id. at 0231-305.)  Priscilla Tudor, who was a white female, evaluated plaintiff.  (See id. at 0231-

17  0262.)  Ms. Tudor proposed a performance rating of "outstanding" for plaintiff.  (See id.)  When

18  he received his performance rating, plaintiff noticed that he had received a rating of "highly

19  successful," although Ms. Tudor had proposed a rating of "outstanding."  (See id. at 0321-0003.)

20  Wayne Ernstrom, the Chief of Social Work Service, downgraded plaintiff's rating.  (See id. at

21  0231-0219.)  Mr. Ernstrom downgraded plaintiff's rating so that the rating would "reflect the

22  performance of other social workers who performed at the same level".  (See id. at 0231-0309.)

23        Mr. Ernstrom had the authority, as the approval manager, to change employee

24  ratings.  (See id. at 0231-0384.)  Plaintiff was not the only employee who received a rating

25  different than the rating which was originally proposed.  (See id. at 0231-0219.)  For example, the

26  rating of Ruth Atkins was changed from "outstanding" to "highly successful" so that it "could

7

become consistent with ratings of other social workers with the same performance". (See id. at

0231-0316.)  The ratings of Joan Zabih and Michaela Wilcznski were also changed to "highly

successful" from "outstanding" for the same reason. (See id. at 0231-0329.)  Ms. Atkins and Ms.

Zabih were supervised by Ms. Tudor, and Ms. Wilcznski was supervised by Katrina Steer. (See

id. at 0231-0329.)  All three of their ratings were changed by Mr. Ernstrom. (See id.)

          After discovering that his rating had been changed, plaintiff contacted Ms. Tudor.

(See id. at 0231-0010.)  Ms. Tudor informed plaintiff that Mr. Ernstrom had the authority to

change ratings. (See id.)  On December 2, 1996, an EEOC investigator concluded that the

evidence did not support plaintiff's allegations that his rating was changed due to discrimination.

(See id. at 0231-0015.)

          To establish a prima facie case of discrimination on his claim that his rating was

changed based on a discriminatory intent, plaintiff must show that (1) he is a member of a

protected class; (2) he was subject to an adverse personnel action; and (3) a similarly situated

person who was not a member of the protected class was treated differently.  See Pejic v. Hughes

Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988.)   Plaintiff bears the responsibility of showing

that similarly situated co-workers were treated differently.  See Texas Dep't of Community

Affairs v. Burdine, 450 U.S. 248, 258 (1981).  In order to be similarly situated, the comparative

employees must have been dealt with by the same supervisor, been subjected to the same

standards and have engaged in similar conduct.  See Vasquez v. County of Los Angeles, 349 F.3d

634, 641 (9th Cir. 2003.)   If plaintiff fails to identify similarly situated, non-minority employees

who were treated disparately, then his case must fail because the burden is on plaintiff to establish

a prima facie case.  See McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).

          Here, the undisputed evidence reveals that plaintiff was treated in accord with

similarly situated, non-minority employees.  Specifically, it is undisputed that other social

workers had their ratings adjusted from "outstanding" to "highly successful". (Def.'s Mot.

Summ. J., Ex. B.)  Additionally, plaintiff has failed to introduce any evidence which would show

1   that the lowering of his rating resulted in any sort of adverse personnel action.  See e.g., Brooks v.

2   City of San Mateo, 229 F.3d 917, 929-30 (9th Cir. 2000)(stating that in order to show adverse

3   personnel action, an employee must show a final or lasting action).  The undersigned finds that

4   plaintiff has failed to establish any genuine issue of material fact showing that his rating was

5   changed due to his race. Accordingly, the undersigned recommends granting summary judgment

6   on this claim.

7       *Duty Hours Inquiry*

8       In his second claim in his second complaint, plaintiff alleges that Rene Marini,

9   who is a white female and the coordinator of the substance abuse and diagnosis program, caused

10  him emotional distress by requesting his schedule and duty hours during staff meetings on May

11  29th, June 5th, 19th and 23 of 1996.  (Def.'s Mot. Summ. J., Ex. C at 0231-0005.)  Plaintiff

12  appears to argue that Ms. Marini's inquiry rose to the level of discrimination and harassment.

13  (See id.)

14      The undisputed facts reveal that Ms. Marini worked at the Sacramento Mental

15  Health Clinic, but she was not plaintiff's direct supervisor.   (See id. at 0231-0252.)  Ms. Marini

16  was in charge of scheduling patients for plaintiff.   (See id.)   Ms. Marini inquired about

17  plaintiff's duty hours because she was confused about his schedule.   (See id. At 0231-0011,

18  0231-0255.)  Ms. Marini was confused about plaintiff's hours because, for several months,

19  plaintiff had arrived at work after her and left work before her.   (See id. at 0321-0255:3.)

20  Plaintiff admitted to the EEOC counselor investigating his claim that he usually arrived at work

21  late and left early.   (See id. at 0231-0024.)  Plaintiff stated that he did this with the consent of the

22  social work service chief.   (See id.)

23      In order to establish a claim of disparate treatment or retaliation, a plaintiff must

24  show, among other things, that he suffered an adverse personnel action.  See McDonnell Douglas,

25  411 U.S. at 802, Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994.)  The Ninth Circuit

26  has defined an adverse personnel action for purposes of a retaliation claim as "any adverse

9

treatment that is based on retaliatory motive and reasonably likely to deter the charging party or others from engaging in the protected activity".   Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000).  The court determined that "lateral transfers, unfavorable job references, and changes in work schedules" could reasonably deter employees from engaging in protected activities.  Id. at 1243.  An employee must suffer a final or lasting adverse action in order to establish a prima facie case of employment discrimination under Title VII.  See Brooks, 229 F.3d at 929-30.  Another district court has found that an inquiry about an employee's schedule is not an adverse personnel action.  See Mendoza v. Sysco Food Servs., 337 F.Supp. 2d 1172, 1192 (D.C. Ariz. 2004)(finding no adverse action and granting summary judgment where plaintiff's supervisor questioned plaintiff regarding a vacation return date).

Here, plaintiff cannot show that he suffered any adverse employment action stemming from Ms. Marini's inquiry.  Subjectively, plaintiff was not deterred from engaging in protected activity because he continued to file claims after Ms. Marini's inquiry.  Objectively, no reasonable employee would be deterred from engaging in protected activity because a co-worker inquired about his duty hours.  Additionally, plaintiff cannot show that Ms. Marini's inquiry resulted in a decrease to his pay, a transfer or a change to his work schedule.  See Ray, 217 F.3d at 1242-43.  In short, plaintiff can show no adverse action because he can show no lasting or final effect on his employment.  See Brooks, 229 F.3d at 930.  Accordingly, the undersigned finds that plaintiff has not established a prima facie case of discrimination or retaliation and recommends granting summary judgment on this claim.

*Discouraged from Pursuing Claims*

Plaintiff's third claim in his second complaint is that Greg Harms, EEOC Counselor, and Rebecca Drummond, EEOC Program Manager, discouraged him from pursuing discrimination claims.  (Def.'s Mot. Summ. J., Ex. C at 0231-0008.)

The undisputed facts reveal that plaintiff met with Mr. Harms on July 5, 1996,

1   regarding plaintiff's discrimination claim based on failure to promote.[3]  (See id. at 0231-0297.)

2   In addition to the failure to promote claim, plaintiff complained that he had been treated poorly

3   and that he did not get along with his co-workers at the Sacramento Mental Health Clinic.

4   (See id. at 0231-0298.)   Mr. Harms asked plaintiff for specific times and dates concerning these

5   complaints, but plaintiff responded only with vague and conclusory statements.  (See id.)

6   Because plaintiff could not cite specific facts or events to support his other claims, Mr. Harms

7   considered only his failure to promote claim.  (See id.)  Mr. Harms never told plaintiff that he

8   would refuse to accept plaintiff's claims, only that he required more information to conduct an

9   investigation.  (See id. at 0231-0301-02.)

10          When Ms. Drummond received plaintiff's formal complaint, she noticed that

11  plaintiff had included approximately eight additional issues in his formal complaint that were not

12  included in the fact finding conducted by Mr. Harms.  (See id. at 0231-0278.)  Ms. Drummond

13  sent plaintiff a letter requesting more information about plaintiff's claims.  (See id.)  Plaintiff's

14  response was cursory and non-responsive.  (See id.)  On September 10, 1996, Ms. Drummond

15  sent plaintiff a letter explaining her acceptance of plaintiff's failure to promote claim.  (See id. at

16  0231-0281.)  On October 1, 1996, Ms. Drummond sent plaintiff an e-mail telling him that he

17  could include additional claims with the failure to promote claim.  (See id. at 0231-0284.)

18  Plaintiff responded that he did not want to combine his complaints and that he would be opening

19  a new claim.  (See id. at 0231-0285.)

20          An adverse employment action is a necessary element of a prima facie

21  discrimination or retaliation claim.  See McDonnell Douglass, 411 U.S. at 802.  Plaintiff cannot

22  show that the actions of Mr. Harms or Ms. Drummond had a lasting or final effect on his

23  employment–the action did not change plaintiff's pay or working hours and it did not deter him

24  from filing future discrimination complaints.  See id.  Additionally, the Ninth Circuit has stated

25  

26          [3]This claim is plaintiff's first complaint and is referred to in this opinion as plaintiff's
    collateral duty claim.

1 that the conduct of an EEOC Counselor or claims manager does not constitute an adverse

2 employment action.  See Ward v. EEOC, 719 F2d 311, 312-13 (9th Cir. 1983).   Title VII does

3 not provide plaintiff with either an express or an implied cause of action against the EEOC to

4 challenge its investigation or processing of a complaint.  See id. at 313.  Accordingly, the

5 undersigned recommends that summary judgment be granted on this claim.

6       *Denial of Sufficient Time to Notify Representative*

7       In his fourth claim in his second complaint, plaintiff alleges that he was subjected

8 to harassment and reprisal as a result of being denied sufficient time to notify his representative of

9 a scheduled meeting with the clinic manager, Dr. Wood, and the substance abuse coordinator, Ms.

10 Marini.  (Def.'s Mot. Summ. J., Ex. C at 0231-0005.)  Dr. Wood requested  a meeting to try to

11 resolve conflict between plaintiff and Ms. Marini. (See id. at 0231-0011.)  During the week of

12 July 22, 1996, a meeting was scheduled for August 1, 1996.  (See id. at 0231-0107.)  Plaintiff

13 believed that the time of the meeting was unconfirmed until he received an e-mail regarding the

14 meeting from Dr. Wood on July 31, 1996.  (See id. at 0231-0106, 0131, and 0132.)  Plaintiff sent

15 an e-mail stating that he and his union representative would not attend the meeting because he

16 had been unable to schedule the representative for an unconfirmed meeting. (See id. at 0231-

17 0005.)

18       Dr. Wood did meet with plaintiff at 7:30 am on August 1, 1996.  (See id. at 0231-

19 0106.)  This is apparently the meeting that plaintiff refers to in his complaint.  When Dr. Wood

20 spoke with plaintiff he expressed concern about a medical excuse from plaintiff's therapist stating

21 that plaintiff could not work at the clinic. (See id.)  Dr. Wood also asked plaintiff why he was at

22 the clinic if it was too stressful for him. (See id.)

23       Based on the undisputed facts, plaintiff has failed to establish a prima facie case of

24 disparate treatment or retaliation because plaintiff has failed to establish that he was subject to an

25 adverse employment action as a result of his conversation with Dr. Wood.  See McDonnell

26 Douglas, 411 U.S. at 802.  Adverse personnel actions are actions that materially affect

1    compensation, terms, conditions or privileges of employment.  See Little v. Windermere

2    Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002).  Adverse personnel actions should not be

3    deemed so broad as to impose an intangible state of mind, i.e., "worry that employers will be

4    paralyzed into inaction once an employee has lodged a complaint under Title VII".  See Brooks,

5    229 F.3d at 928.  Because plaintiff cannot show that his conversation with Dr. Wood materially

6    affected  compensation, terms, conditions or privileges of employment, he cannot establish that he

7    was subject to an adverse employment action.  Accordingly, the undersigned finds that plaintiff

8    has failed to establish a prima facie case of either discrimination or retaliation and recommends

9    that summary judgment be granted on this claim.

10                 *Tardiness and Early Departure Memorandum*

11                 In his fifth claim in his second complaint, Plaintiff claims that Ms. Marini, the

12   substance abuse coordinator, inflicted racial discrimination, reprisal, intentional infliction of

13   emotional damage and harassment upon plaintiff by sending a memorandum to Dr. Wood about

14   plaintiff's work performance, which expressed concern about plaintiff getting to work and leaving

15   work on time. (Def.'s Mot. Summ. J., Ex. C. at 0231-0008.)

16                 The undisputed evidence reveals that, on July 18. 1996, Ms. Marini sent a

17   memorandum to Dr. Wood about plaintiff's working hours that summarized a discussion that she

18   had with plaintiff concerning, among other things, getting to work on time and leaving on time.

19   (See id. at 0231- 0332.)   Ms. Marini was not Plaintiff's supervisor.  (See id. at 0231-0236.)  Dr.

20   Wood never mentioned the memorandum to plaintiff.   (See id. at 0231-0242.)

21                 Plaintiff cannot show that the memorandum resulted in an adverse employment

22   action since no action ever occurred as a result of the memo.  See Little, 301 F.3d at 970.   Dr.

23   Wood never mentioned the memorandum to plaintiff.  The memorandum itself cannot be

24   considered an adverse personnel action.  See Keyser v. Sacramento City Unified School Dist.,

25   265 F.3d 741, 752, n. 4 (9th Cir. 2001)(stating that action that never came to fruition is not even a

26   potentially viable adverse action.).  Accordingly, plaintiff cannot establish a prima facie case of

1   discrimination or retaliation on this claim.  The undersigned recommends granting summary

2   judgment.

3        *Reassignment*

4            In his sixth claim in his second complaint, plaintiff alleges that he was harassed

5   when management assigned plaintiff to Sacramento Mental Health Clinic on a full time basis.

6   Def.'s Mot. Summ. J., Ex. C at 0231-0026.)  (Plaintiff had been working half time at Sacramento

7   Mental Health and half time at David Grant Hospital.  (See id.)  In June 1996, plaintiff inquired

8   about returning to the facility where he worked prior to working his split shift between David

9   Grant and Sacramento. (See id. at 2031-0120.)  Plaintiff was told that the only substance abuse

10  social work positions available were in Sacramento and in Redding.  (See id. at 2031- 0121.)

11  Plaintiff sent a letter in July 1996 requesting that he not be assigned to work in Sacramento due to

12  mental and emotional stress. (See id. at 2031- 0125.) In August 1996, plaintiff sent a letter

13  expressing an interest in full time assignment at David Grant.  (See id. at 2031- 0138.)

14          In late August, plaintiff was informed that he was going to be moved to the

15  Sacramento Clinic full time. (See id. at 2031- 0139.)  Plaintiff's pay remained unaffected by the

16  proposed move. (See id. at 2031- 0232.)  Because the Sacramento pay was lower than the pay in

17  the Bay Area, plaintiff was moved up a step.  (See id.)  As a result of an accounting/clerical error

18  in Human Resources, plaintiff did not initially receive the correct pay, but that was later corrected

19  and plaintiff was paid retroactively. (See id.)  Plaintiff never actually worked full time at

20  Sacramento Health Clinic. (See id. at 2031- 0158.)  He instead took a position in San Francisco

21  (See id. at 2031- 0116).

22          Plaintiff cannot establish a prima facie case of employment discrimination or

23  retaliation.  A proposed action that does not come to fruition is not an adverse personnel action.

24  See Keyser, 265 F.3d at 752 n. 4.  An employee must suffer a lasting effect in order to create a

25  prima facie case of discrimination under Title VII.  See Brooks, 229 F.3d at 929-30.  Here,

26  plaintiff cannot show that the proposed move changed any material aspect of his employment–his

14

1  pay and working hours remained the same.  See Burlington Indus. v. Ellerth, 524 U.S. 742, 761

2  (1998)(stating that lateral transfer without addition of different job responsibilities was not and

3  adverse action).   Additionally,  plaintiff cannot show that the proposed move to the Sacramento

4  Clinic was an adverse action because it never came to fruition.  See Keyser, 265 F.3d at 752 n. 4.

5  Accordingly, the undersigned recommends that summary judgment be granted on this claim.

6          *Office Assignment*

7          In his seventh claim in his second complaint, plaintiff claims that he was not given

8  permanent office space at Sacramento Mental Health because he was Hispanic. (Def.'s Mot.

9  Summ. J., Ex. C at 0231-0026.)  He claims that this was employment discrimination and

10 retaliation. (See id.)

11         The undisputed facts reveal that plaintiff did not have his own office at

12 Sacramento Mental Health Clinic.  (See id. at 2031- 0167.)  Plaintiff was told that an office would

13 be available for him when he started working at the Clinic on a full time basis.  (See id. at 2031-

14 0140.)  Other employees, who, like plaintiff, were part-time employees at the Clinic, did not have

15 their own office space.  (See id. at Ex D at 0420-0157.)

16         Plaintiff cannot establish a prima facie case of employment discrimination or

17 retaliation on this claim.  To show disparate treatment, plaintiff must establish that similarly

18 situated employees were treated differently.  See McDonnell Douglas, 411 U.S. at 802.  Here,

19 plaintiff cannot show that similarly situated employees were treated differently.  Instead, the

20 evidence shows that plaintiff was treated the same as other part-time employees.  (Def.'s Mot.

21 Summ. J., Ex. D at 0420-0157.)   To establish a retaliation claim, plaintiff must show that his lack

22 of office space was the result of an adverse employment action.   See Brooks, 229 F.3d at 929-30.

23 Plaintiff's office situation did not change when he filed his EEOC complaint.  Instead, after filing

24 the complaint, plaintiff was given some limited storage space.  (Def.'s Mot. Summ. J., Ex. C at

25 2031-0167.)  Because plaintiff cannot establish a claim of either discrimination or retaliation, the

26 undersigned recommends granting summary judgement on this claim.

*Emotional Distress*

In his final claim in his second complaint, plaintiff asserts that the conduct of his peers and supervisors caused him to suffer emotional distress.   Plaintiff cannot assert the common law tort of intentional infliction of emotional distress (IIED).  The claims and remedies available under Title VII are the sole and exclusive remedies available to federal employees.  See Brown v. GSA, 425 U.S. 820 (1976).  Accordingly, summary judgment is appropriate on any separate intentional infliction of emotional distress claims that plaintiff seeks to bring.

### 3.   Complaint 97-0420

In his third EEOC compliant, plaintiff raises six claims: change of duty hours, use of Triage room, an October 30, 1996 meeting, a leave request for work related stress, failure to include him in a tour; and not being informed about a co-worker's leave of absence.

*Change of Duty Hours*

In his first claim in his third complaint, plaintiff states that he was discriminated against when his duty hours were changed from 7:00 a.m. to 5:30 p.m. to 7:30 a.m. to 6:00 p.m. (Def.'s Mot. Summ. J., Ex. D at 0420-0003.)  Plaintiff believes that his hours were changed because he was Hispanic.  (See id. at 0420-0011.)  The undisputed facts show that plaintiff's schedule was changed because the supervisor could not justify him coming in at seven and not seeing a patient for an hour.  (See id. at 0420-0114, 0104.)  Plaintiff's hours were changed to better facilitate patient care. (See id.) This change in hours was to take place when plaintiff began working at Sacramento Mental Health Clinic full time. (See id. at 0420-0072.)  Because plaintiff never worked at the Sacramento facility full time, these changes were never implemented. (See id. at 0420-0158.)

Plaintiff cannot establish a prima facie case of employment discrimination or retaliation.  A proposed action that does not come to fruition is not an adverse personnel action. See Keyser, 265 F.3d at 752 n. 4. Here, plaintiff's proposed change of duty hours never occurred. Accordingly, the undersigned recommends summary judgment on this claim.

1  *Use of the Triage Room*

2          Plaintiff's second claim of his third complaint alleges that he was moved out of the

3  Triage room at Sacramento Mental Health Clinic because he was Hispanic. (Def.'s Mot. Summ.

4  J., Ex. D at 0420-0011.)  The evidence shows that plaintiff was asked to leave the Triage room

5  because a co-worker had an appointment with a dangerous patient who he had never met. (See id.

6  at 0420-0147.)  The patient had a history of violence and homicidal behavior.  The Triage room

7  was equipped to handle such a patient. (See id.)  The undisputed facts also show that other part-

8  time workers were often required to change offices.  (See id. at 0420- 0118, 0157.)

9          Plaintiff cannot establish a prima facie case of discrimination based on his being

10  moved from the Triage room.  The undisputed evidence shows that plaintiff was treated no

11  differently from similarly situated non-minority workers.  No part-time worker at the Sacramento

12  Mental Health Clinic had a fixed office space.  See McDonnell Douglas, 411 U.S. at 802.

13  Additionally, plaintiff cannot show any adverse employment action as he cannot show that any

14  material terms or conditions of his employment were altered by being asked to move from the

15  Triage room.  See Little, 301 F.3d at 970.  Accordingly, the undersigned recommends that

16  summary judgment be granted on this claim.

17  *October 30, 1996 Meeting Regarding the Triage Room*

18          In his third claim of his third complaint, plaintiff alleges that he was harassed

19  because of a meeting that occurred on October 30, 1996 between plaintiff and Dr. Wood, a

20  supervisor, about the Triage room. (Def.'s Mot. Summ. J., Ex. D at 0420-0003.)  Dr. Wood

21  informed plaintiff that Dr. Wood was upset that plaintiff had sent an e-mail message to several

22  employees about the Triage room incident.  (See id. at 0420-0012.)  Dr. Wood told plaintiff that

23  plaintiff should have discussed sending the e-mail with him prior to sending it. (See id.)  Dr.

24  Wood told plaintiff that plaintiff had the right to go above Dr. Wood, but that it was preferable to

25  go through him initially. (See id. at 0420-0115.)

26

1        In order to establish a prima facie case of discrimination or retaliation, a plaintiff

2 must demonstrate that he suffered from an adverse employment action.  See  Little, 301 F.3d at

3 970.  The Ninth Circuit has stated that only "non-trivial" employment actions that would deter

4 reasonable employees from complaining about Title VII violations will constitute actionable

5 retaliation.  See Brooks, 229 F.3d at 928.  Actions which do not materially affect the

6 compensation, terms or conditions of employment are trivial.  See Little, 301 F.3d at 970.  Here,

7 plaintiff has provided no evidence that Dr. Wood's inquiry resulted in any type of adverse affect

8 as to material conditions or terms of his employment.  Dr. Wood did not suggest that plaintiff stop

9 raising concerns, but instead suggested that it would be preferable that plaintiff discussed them

10 with him initially, rather than pursuing them through a superior.  (Def.'s Mot. Summ. J., Ex. D  at

11 0420-0115.)  Because plaintiff's conversation with Dr. Wood does not constitute an adverse

12 employment action, the undersigned recommends granting summary judgment on this claim.

13        *Leave Request for Work Related Stress*

14        Plaintiff's fourth claim in his third complaint is that Dr. Wood would not sign his

15 request for sick leave since plaintiff was requesting leave for work related stress. (Def.'s Mot.

16 Summ. J., Ex. D at 0420-0003.)  The undisputed facts show that Human Resources had instructed

17 that leave requests for work related stress not be accepted if a "Report of Occupational

18 Illness/Disease form" had not been filed. (See id.)  Plaintiff choose not to file this form. (See id.)

19 When plaintiff subsequently submitted a leave request that omitted the reference to work related

20 stress, his leave was granted.  (See id. at 0420-0700.)

21        In order to prevail on his claim, plaintiff must establish that he was treated

22 differently than other similarly situated employees. See McDonnell Douglas, 411 U.S. at 802  As

23 plaintiff cannot demonstrate that similarly situated employees were treated differently, nor can he

24 demonstrate that the denial of leave for "work related stress" materially affected the terms and

25 conditions of his employment.  Accordingly,  he cannot establish a prima facie case of

26 discrimination.  The undersigned finds that summary judgment is appropriate on this claim.

1    *Exclusion from Tour of Substance Abuse Facilities*

2            Plaintiff's fifth claim in his third complaint is that he was not included in a

3    substance abuse facility tour. (Def.'s Mot. Summ. J., Ex. D at 0420-0012.)  The tour was

4    conducted by Ms. Marini.  (See id.)  Plaintiff does not know the exact date of the tour;  whether

5    he was working in Sacramento at the time; or whether he would have been available to attend had

6    he been notified.  (See id.)  Ms. Marini stated that she never considered asking plaintiff to go

7    because he had already been to all the facilities.  (See id.)

8            In order to establish a prima facie case of discrimination or retaliation, plaintiff

9    must demonstrate an adverse employment action.  See Little, 301 F.3d at 970. The Ninth Circuit

10   has stated that "mere ostracism by co-workers does not constitute an adverse action."  Ray, 217

11   F.3d at 1241.  Plaintiff does not show that the failure to include him in the tour affected material

12   conditions of his job in any way.  Instead, the undisputed evidence shows that plaintiff had

13   already visited all the substance abuse facilities.  Accordingly, the undersigned recommends that

14   summary judgment be granted on this claim.

15   *Failure to Inform Plaintiff of Ms. Marini's Leave of Absence*

16           Plaintiff's sixth claim in his third complaint is that  he was discriminated against

17   because his co-worker took leave without informing him. (Def.'s Mot. Summ. J., Ex. D at 0420-

18   0011.)  Plaintiff felt that his co-worker should have met with him to update him on her patients

19   since he would have to see them while she was out. (See id.)  However, when plaintiff took sick

20   leave, he did not confer with anyone regarding his patients. (See id. at 0420-0158.)   To dignify

21   plaintiff's claim would also appear to place a burden on all those falling ill to stay well long

22   enough to educate their co-workers.

23           As noted in the above claim, "mere ostracism by co-workers does not constitute an

24   adverse action."  Ray, 217 F.3d at 1241.  Plaintiff must show that the co-worker's failure to

25   include him materially affected the terms or conditions of his employment.  See Little, 301 F.3d at

26   970.)  Here, plaintiff cannot show any genuine issue of fact as to whether Ms. Marini's actions

1   adversely affected him.  Accordingly, the undersigned recommends granting summary judgment

2   on this claim.

3           4.   <u>Complaint 98-0973</u>

4       In his fourth complaint, plaintiff raises five claims: reassignment due to

5   confrontation, not being promoted, harassment from reprimand, hostile work environment and

6   emotional distress.

7      *Reassignment Due to Confrontation*

8       In the first claim of his fourth complaint, plaintiff states that his reassignment from

9   "CREC"[4] to David Grant hospital was the result of discrimination or retaliation. (Def.'s Mot.

10  Summ. J., Ex. E.)  The undisputed facts show that, although plaintiff did make some disparaging

11  statements about a co-worker at a meeting, he had been requesting a transfer to David Grant for

12  almost a year.

13      In order to establish a prima facie case of discrimination or retaliation, plaintiff

14  must demonstrate an adverse employment action.  <u>See</u>  <u>Little</u>, 301 F.3d at 970. A lateral transfer

15  that does not result in a reduction in pay or different job duties is not an adverse personnel action.

16  <u>See</u>  <u>See</u> e.g. <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 761 (1998).  As plaintiff cannot show

17  any adverse personnel action, he cannot establish prima facie evidence of discrimination.  The

18  undersigned recommends granting summary judgment on this claim.

19     *Failure to be Promoted*

20      In his second claim of his fourth complaint, plaintiff alleges that the VA changed a

21  classification of a coordinator position to a regular social worker position, eliminating a

22  promotional opportunity for plaintiff. (Def.'s Mot. Summ. J., Ex. E at 0973-0005.) Plaintiff

23  believes that the decision was made to deprive him of promotional opportunities.  (<u>See</u> <u>id.</u> at

24  

25      [4]It is not clear from the court filings for what this acronym stands.  An internet search
    revels that it stands for the Center for Rehabilitation and Extended Care.
26  <u>See</u> www.visn21.med.va.gov/CARES/VISN21FactSheet.htm

1   0973-0072.)  There were no vacancies in the NCHCS.  (<u>See</u> <u>id.</u> at 0973-0109.)

2           In order to establish a prima facie case of discrimination or retaliation, plaintiff

3   must demonstrate an adverse employment action.  <u>See</u> <u>Little</u>, 301 F.3d at 970. Obstructing an

4   employee from consideration for a vacancy is actionable under Title VII.  <u>See</u> <u>Bouman v. Block</u>,

5   940 F.2d 1211, 1229 (9th Cir. 1991).  The closing of a job to plaintiff and the loss of opportunity

6   to even compete for the position can establish an adverse employment action.  <u>See</u> <u>id.</u>  Here,

7   however,  plaintiff makes no showing that he was prevented from applying for any position.  He

8   makes no showing that he even applied for any positions.  He provides no evidence that any

9   vacancies were available.  Accordingly, plaintiff fails to establish a prima facie case of

10   discrimination.  The undersigned recommends granting summary judgment on this claim.

11        *Harassment from Reprimand*

12           In his third claim of his fourth complaint, plaintiff alleges that he received a letter

13   of reprimand which questioned his abilities.  (Def.'s Mot. Summ. J., Ex. E at 0973-0065.)  The

14   undisputed facts show that the alleged letter was a memorandum written at plaintiff's request.

15   (<u>See</u> <u>id.</u> at 0973-0108; 0154.)  Plaintiff requested that a memorandum be written stating the

16   background for plaintiff's transfer to David Grant. (<u>See</u> <u>id.</u>)  The letter was not disciplinary.

17   (<u>See</u> <u>id.</u> at 0973-0154.)  It recognized that plaintiff's continued work at CERC did not facilitate a

18   team relationship and pointed out that plaintiff had requested a transfer closer to his home and

19   that the transfer met that request.  (<u>See</u> <u>id.</u>) Plaintiff has no formal reprimand in his files.  (<u>See</u> <u>id.</u>

20   at 0973-0064.)

21           In order to establish a prima facie case of discrimination or retaliation, plaintiff

22   must demonstrate an adverse employment action.  <u>See</u> <u>Little</u>, 301 F.3d at 970.  Plaintiff has not

23   demonstrated any adverse personnel action as a result of the memorandum.  Further, an employer

24   complying with a request at the behest of the employee could hardly be considered an adverse

25   personnel action.  <u>See</u> <u>e.g.</u>, <u>Krause v. City of La Crosse</u>, 246 F.3d 995, 1001 (7th Cir. 2001).

26   Accordingly, the undersigned recommends granting summary judgment on this claim.

1    *Hostile Work Environment*

2       Plaintiff's fourth claim in his fourth complaint is that the conduct complained of in

3    his four EEOC complaints constitutes a hostile work environment. To prevail on such a claim, the

4    working environment must be both subjectively and objectively abusive. See  Brooks, 229 F.3d at

5    923-924.  As discussed in detail in the previous sections, no reasonable person could find

6    plaintiff's work environment abusive. See id.  The conduct that plaintiff complains of was

7    generally infrequent, not severe, and did not unreasonably interfere with plaintiff's job

8    performance. See id.   The undersigned recommends that summary judgment be granted on this

9    claim.

10   *Emotional Distress*

11      Plaintiff's fifth claim in his fourth complaint is for emotional distress.  As

12   discussed previously, to the extent that plaintiff seeks to bring this as a separate claim, it is barred

13   by Title VII.  See Brown, 425 U.S. 820.  The undersigned recommends granting summary

14   judgment on this claim.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

**III.     Conclusion**

For the reasons discussed above, the undersigned recommends that defendant's motion for summary judgment be granted.   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


DATED:   January 9, 2006.


**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE